UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**

98 AUG -7 PH 1: 53

U.S. DISTRICT COURT
N.D. OF ALABAMA

DAWN RELIFORD, )
)
    Plaintiff, )
)
v. )  Civil Action No. 98-S-1867-NE
)
JOE W. WHISANTE, SHERIFF OF )
MADISON COUNTY, ALABAMA; )
TIMOTHY W. MORGAN, DISTRICT )
ATTORNEY OF MADISON COUNTY, )
ALABAMA; AND THE MADISON )
COUNTY COMMISSION, a political )
subdivision of the State )
of Alabama, )
)
    Defendants. )

**ENTERED**

AUG 0 7 1998

### MEMORANDUM OPINION

Plaintiff owns two nightclubs in Madison County, Alabama, the "Fantasia" and "Dawn's Den." Neither establishment dispenses alcoholic beverages or liquor; rather, both sell "snacks" and non-alcoholic beverages, and provide live entertainment for adults in the form of "erotic female" performers engaged in topless and nude dancing.[1] Plaintiff attacks three sections of a recently enacted statute, Alabama Act No. 98-467, passed on the last day of the State Legislature's 1998 regular session and approved by the Governor on April 29, 1998. That Act provides for various amendments and additions to Title 13A, Chapter 12, of the 1975 Code of Alabama, wherein the State's "Offenses Against Public Health and Morals" are consolidated. Plaintiff seeks injunctive relief against the Sheriff, District Attorney, and Commissioners of Madison County, to restrain each of them from attempting to enforce

---

[1] *See* Complaint at 2, 3; Plaintiff's affidavit at 2.

the challenged provisions of the Act, which she claims infringe rights secured to her by the First, Fifth, and Fourteenth Amendments to the United States Constitution. Her claims are based upon 42 U.S.C. § 1983. The action presently is before this court on plaintiff's motion for a temporary restraining order.

To justify the issuance of a temporary restraining order, plaintiff must demonstrate: (1) a substantial likelihood of ultimately prevailing on the merits; (2) an irreparable injury if the restraining order does not issue;[2] (3) a threatened injury to plaintiff that is greater than any harm a restraining order would inflict on defendants; and (4) the absence of any adverse effect on the public interest if the injunction issues. *E.g. Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995); *see also Levi Strauss & Co. v. Sunrise International Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995); *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994). Failure of plaintiff to demonstrate any one of those four elements requires this court to deny the motion for temporary restraining order. *See Café 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir. 1993)(preliminary injunction with same requirements as TRO). Defendants have contended, both in brief and oral argument, that plaintiff has not demonstrated a substantial likelihood of ultimately prevailing on the merits. To resolve that issue, each section of Act No. 98-467 challenged by plaintiff must be examined in the context of controlling precedent.

---

[2]The law is clear that "[t]he loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976).

2

## I. SECTION 7 OF ACT No. 98-467

The main thrust of plaintiff's attack upon the constitutionality of Act No. 98-467 is directed at section 7, which adds an entirely new section to the 1975 Code of Alabama, denominated § 13A-12-200.11, and reading in pertinent part as follows:

> It shall be unlawful for any business establishment or any private club to show or allow to be shown for entertainment purposes <u>the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state</u>. A violation of this section shall be a Class C felony. [Emphasis supplied.[3]]

Plaintiff asserts that provision was enacted for the purpose of prohibiting

> topless and nude female dance entertainment (not public nudity), expression that is accorded some protection by the First Amendment to the U.S. Constitution. The statute[']s focus on nude and topless dance entertainment is a content-based restriction on protected expression in violation of the First Amendment to the U.S. Constitution made applicable to the State of Alabama through the Fourteenth Amendment.[4]

---

[3]The emphasized language obviously is drawn from the definition of "nudity" found in Indiana Code § 35-45-4-1(b) (1988), addressed by the Supreme Court in **Barnes v. Glen Theatre, Inc.**, 501 U.S. 560, 569 n.2, 111 S.Ct. 2456, 2462 n.2, 115 L.Ed.2d. 504 (1991), discussed *infra*, and reading in pertinent part as follows:

Public indecency; indecent exposure

Sec. 1. (a) A person who knowingly or intentionally, in a public place: ... (3) appears in a state of nudity ... commits public indecency, a Class A misdemeanor.

(b) "Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of the covered male genitals in a discernibly turgid state.

[4]Complaint ¶ 5.

3

The applicability of the First Amendment to the activity plaintiff seeks to protect is not readily apparent from the text of the Constitution itself. Rather, the First Amendment explicitly protects the freedoms of "speech, or of the press": i.e., only oral and written speech; the Amendment does not purport to reach conduct. During this century, however, the protections of that Amendment have been expanded by the Supreme Court to encompass what has become known as "expressive conduct." Beginning in 1931, the Court struck down, as an impermissible infringement on freedom of speech, a California statute prohibiting public display of "any flag, badge, banner, or device ... as a sign, symbol or emblem of opposition to organized government." *Stromberg v. California*, 283 U.S. 359, 361, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). Since then, the Court has accorded First Amendment protection for such conduct as: picketing by striking union members[5]; public sit-ins protesting racial segregation[6]; the wearing of black arm bands as a protest to war[7]; peace symbols affixed to flags[8]; and, flag burning.[9]

Even so, as the following discussion will demonstrate, the issues of whether non-obscene nude dancing is entitled to First Amendment protection as "expressive conduct" and, if so, the level of that protection,[10] have vexed the Supreme Court and the Eleventh

---

[5]Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

[6]Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966).

[7]Tinker v. Des Moines Indep. Community Sch. Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

[8]Spence v. Washington, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974).

[9]United States v. Eichman, 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990). *See also* Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).

[10]See Jeffrey M. Shaman, *The Theory of Low-Value Speech*, 48 SMU L. Rev. 297, 329-30 (1995), for a good summary of the three levels of judicial review in

Circuit.

## A. Supreme Court Precedent Prior to *Barnes v. Glen Theatre, Inc.*

The Supreme Court grappled with these issues on several occasions prior to its watershed decision in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 501 (1991), and in each case suggested that nude dancing of the kind involved here is expressive conduct entitled to some level of constitutional protection.

### 1. *California v. LaRue*

The Supreme Court first addressed the issue of regulating nude dancing in *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). The Court upheld regulations promulgated by the California Department of Alcoholic Beverage Control, prohibiting sexually explicit films and live, nude dancing in licensed bars and nightclubs where alcohol was served. The Court found that the regulations were directed at "performances' that

---

such cases:

> In First Amendment cases, as in cases involving other constitutional provisions, the Supreme Court has developed a multi-level system of judicial review. At the highest tier, the Court applies strict judicial scrutiny, which requires government action to be justified by a compelling state interest achieved through the least restrictive means possible. ...
>
> Somewhat less, though not insignificant, protection is afforded by intermediate scrutiny, which requires government action to be justified by an important state interest achieved through carefully selected, although not necessarily perfect, means. ...
>
> Minimal [or "rational basis"] scrutiny is the lowest level of judicial review. It grants a great deal of deference to actions of the other branches of government and requires only that they justify their actions by a valid or legitimate state interest achieved through reasonable means. In practice, minimal scrutiny usually operates as no scrutiny at all and defers totally to the other branches of government. [Emphasis supplied.]

5

partake more of gross sexuality than communication." *Id.* Even so, the Court recognized that "at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression ...." *Id.* at 118, 93 S.Ct. at 397 (emphasis supplied). The Court did not clearly define the appropriate level of First Amendment protection to be accorded such conduct, however. Several passages in the majority opinion, authored by (then) Justice Rehnquist,[11] nevertheless hinted that the Court was applying a "rational basis" standard of review to the challenged regulations. For example, the last paragraph of the majority opinion begins with this statement: "The Department's conclusion, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one." *Id.* at 119, 93 S.Ct. at 397 (emphasis supplied). But, that finding was immediately followed by this pronouncement: "Given the added presumption in favor of the validity of the state regulation in this area that the Twenty-First Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution." *Id.* at 119, 93 S.Ct. at 397 (emphasis supplied). The last statement subsequently led some to conclude that the *LaRue* holding was premised upon the State's power to regulate the sale of liquor pursuant to the Twenty-First Amendment.[12]

---

[11]Justice Rehnquist wrote for himself and four members of the *LaRue* Court. Justice Stewart concurred and filed a separate opinion. Justices Douglas, Brennan, and Marshall dissented and filed separate opinions.

[12]The Supreme Court recently rejected that interpretation, however, saying

6

## 2. *Doran v. Salem Inn, Inc.*

Two years later, in *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), the Supreme Court again suggested that nude dancing was expressive conduct entitled to some level of First Amendment protection. In *Doran*, the owners of three topless bars sought an injunction against a North Hampstead, New York ordinance that banned topless performances in public places. Citing *LaRue*, the Court said that nude dancing "might be entitled to First and Fourteenth Amendment protection under some circumstances." *Id.* at 932, 95 S.Ct. at 2568 (emphasis supplied). The Court affirmed the district court's entry of a preliminary injunction on the ground the ordinance was overbroad, because it applied to all commercial establishments, not just those serving alcohol. *Id.* at 932-33, 95 S.Ct. at 2568-69.

## 3. *Schad v. Borough of Mount Ephraim*

The Supreme Court next entertained the issue of nude dancing in 1981, in the case of *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). In *Schad*, the defendants operated an adult bookstore containing a coin-operated mechanism that permitted a customer to watch the performance of a live nude dancer through a glass panel. The defendants appealed their convictions under a local ordinance banning all live nude entertainment in the borough. A fragmented Court reversed the convictions. Justice White's plurality opinion added strength to

that "the Court's analysis in *LaRue* would have led to precisely the same result if it had placed no reliance on the Twenty-First Amendment." 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 116 S.Ct. 1495, 1514, 134 L.Ed.2d 711 (1996).

7

the argument that nonobscene nude dancing constituted expressive conduct entitled to some degree of First Amendment protection by stating "nude dancing is not without its First Amendment protections from official regulation." *Id.* at 65-66, 101 S.Ct. at 2181 (citations omitted). Even so, Justice White side-stepped an opinion on the precise scope of the constitutional protection to be accorded such conduct.

> Whatever First Amendment protection should be extended to nude dancing, live or on film, however, the Mount Ephraim ordinance prohibits all live entertainment in the Borough: no property in the Borough may be principally used for the commercial production of plays, concerts, musicals, dance, or any other form of live entertainment. Because appellants' claims are rooted in the First Amendment, they are entitled to rely on the impact of the ordinance on the expressive activities of others as well as their own. "Because overbroad laws, like vague ones, deter privileged activit[ies], our cases firmly establish appellant's standing to raise an overbreadth challenge."

*Id.* (footnote and citations omitted)(emphasis supplied). Only Justice Blackmun alluded to the issue; in a concurring opinion, he intimated that the proper level of review was higher than a rational basis test.

> First, I would emphasize that the presumption of validity that traditionally attends a local government's exercise of its zoning powers carries little, if any, weight where the zoning regulation trenches on rights of expression protected under the First Amendment. In order for a reviewing court to determine whether a zoning restriction that impinges on free speech is "narrowly drawn [to] further a sufficiently substantial governmental interest," ... the zoning authority must be prepared to articulate, and support, a reasoned and significant basis for its decision. This burden is by no means insurmountable, but neither should it be viewed as *de minimis*. In this case, Mount Ephraim evidently assumed that because the challenged ordinance was intended as a land-use regulation, it need survive only

8

> the minimal scrutiny of a rational relationship test, and
> that once rationality was established, appellants then
> carried the burden of proving the regulation invalid on
> First Amendment grounds. ... After today's decision, it
> should be clear that where protected First Amendment
> interests are at stake, zoning regulations have no such
> "talismanic immunity from constitutional challenge."
> *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 75,
> 96 S.Ct. 2440, 2454, 49 L.Ed.2d 310 (1976) (concurring
> opinion).

*Id.* at 77, 101 S.Ct. at 2187 (Blackmun J. concurring)(emphasis

supplied).

## B.    *Barnes v. Glen Theatre, Inc.*

The Supreme Court's most recent opinion addressing regulation

of nude dancing is *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111

S.Ct. 2456, 115 L.Ed.2d. 504 (1991). The principal plaintiffs in

that case were two establishments that provided totally nude

dancing as entertainment in South Bend, Indiana: *i.e.*, "The Kitty

Kat Lounge," which sold alcoholic beverages and presented "go-go

dancing"; and, the "Chippewa Bookstore," an adult bookstore

operated by Glen Theatre, Inc.,[13] which (like plaintiff herein) did

not sell alcoholic drinks, but instead supplied

> so-called adult entertainment through written and printed
> materials, movie showings, and live entertainment at an
> enclosed "bookstore." The live entertainment at the
> "bookstore" consists of nude and seminude performances
> and showings of the female body through glass panels.
> Customers sit in a booth and insert coins into a timing
> mechanism that permits them to observe the live nude and
> seminude dancers for a period of time.

*Barnes*, 501 U.S. at 563, 111 S.Ct. 2459 (emphasis supplied).

---

[13]Glen Theatre, Inc. v. Civil City of South Bend, 695 F. Supp. 414, 419
(N.D. Ind. 1988), *rev'd sub nom.* Miller v. Civil City of South Bend, 904 F.2d
1081 (7th Cir. 1989)(en banc), *rev'd sub nom.* Barnes v. Glen Theatre, Inc., 501
U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991).

9

## 1. The plurality opinion

Chief Justice Rehnquist, writing for himself and Justices O'Connor and Kennedy, held that nude dancing is expressive conduct entitled to some First Amendment protection, but "only marginally so." *Id.* at 566, 111 S.Ct. at 2460.

The plurality opinion also held the appropriate level of protection to be afforded such conduct was the rule enunciated in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), in which the Court held that "symbolic speech" and other expressive conduct is not entitled to full First Amendment protection; rather,

> we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Barnes*, 501 U.S. at 567, 111 S.Ct. at 2461 (quoting *O'Brien*, 391 U.S. at 376-77, 88 S.Ct. at 1678-79).

Applying the four-part *O'Brien* test to the facts in *Barnes*, the plurality found the Indiana public indecency statute was within the constitutional power of the State and furthered the "substantial governmental interests" of "protecting societal order and morality." *Id.* at 567, 568, 111 S.Ct. at 2461, 2462.[14]

---

[14]The plurality opinion in *Barnes* reiterated this finding twice more:

> This and other public indecency statutes were designed to protect morals and public order. The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals, and we have upheld such a basis for legislation. In *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 61, 93 S.Ct. 2628, 2637, 37 L.Ed.2d 446 (1973), we said:

10

Addressing the third prong of the *O'Brien* test, the plurality held that the substantial government interest in protecting public order and morality "is unrelated to the suppression of free expression." *Id.* at 570, 111 S.Ct. at 2462. In so holding, the plurality rejected the contention that statutes prohibiting the performance of nude dancing have the purpose of suppressing the "erotic message" conveyed by such forms of "expression":

> [W]e do not think that when Indiana applies its statute to the nude dancing in these nightclubs it is proscribing nudity because of the erotic message conveyed by the dancers. Presumably numerous other erotic performances are presented at these establishments and similar clubs without any interference from the State, so long as the performers wear a scant amount of clothing. Likewise, the requirement that the dancers don pasties and G-strings does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic.

*Id.* at 570-71, 111 S.Ct. at 2463. In other words, the statute neither prohibited dancing, nor the erotic messages that still could be communicated by scantily clad performers, but simply banned erotic dancing performed nude or semi-nude.

---

> "In deciding *Roth* [*v. United States*, 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498] (1957)], this Court implicitly accepted that a legislature could legitimately act on such a conclusion to protect 'the social interest in order and morality.' [*Id.*], at 485 [77 S.Ct., at 1309]." (Emphasis omitted.)

And in *Bowers v. Hardwick*, 478 U.S. 186, 196, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986), we said:

> "The law, however, is constantly based on notions of morality, and if all laws representing essentially moral choices are to be invalidated under the Due Process Clause, the courts will be very busy indeed."

Thus, the public indecency statute furthers <u>a substantial government interest in protecting order and morality</u>.

*Barnes*, 501 U.S. at 569, 111 S.Ct. at 2462 (emphasis supplied).

11

Finally, the plurality found the statute was "narrowly tailored" to the governmental interests it sought to promote, because dancers only were required to wear a minimum of clothing.

> The fourth part of the O'Brien test requires that the incidental restriction on First Amendment freedom be no greater than is essential to the furtherance of the governmental interest. As indicated in the discussion above, the governmental interest served by the text of the prohibition is societal disapproval of nudity in public places and among strangers. The statutory prohibition is not a means to some greater end, but an end in itself. It is without cavil that the public indecency statute is "narrowly tailored"; Indiana's requirement that the dancers wear at least pasties and G-strings is modest, and the bare minimum necessary to achieve the State's purpose.

Id. at 572, 111 S.Ct. at 2463.

## 2. Justice Souter's concurrence

Justice Souter, in a concurring opinion, agreed with the plurality that an interest in freely engaging in nude dancing is entitled to some degree of protection under the First Amendment, and he also approved the use of the four-part O'Brien test as the appropriate standard for analyzing statutes regulating such expressive conduct. Id. at 581-82, 111 S.Ct. at 2468 (Souter J. concurring). Indeed, Justice Souter wrote separately only for the purpose of suggesting that the substantial governmental interest which justified a statutory ban on nude dancing was deterrence of the pernicious "secondary effects" fostered by adult entertainment establishments.

> I ... write separately to rest my concurrence in the judgment, not on the possible sufficiency of society's moral views to justify the limitations at issue, but on the State's substantial interest in combating the secondary effects of adult entertainment establishments

12

of the sort typified by respondents' establishments.

> It is, of course, true that this justification has
> not been articulated by Indiana's Legislature or by its
> courts. As the plurality observes, "Indiana does not
> record legislative history, and the State's highest court
> has not shed additional light on the statute's purpose,"
> *ante*, at 2461. While it is certainly sound in such
> circumstances to infer general purposes "of protecting
> societal order and morality ... from [the statute's] text
> and history," *ibid.*, I think that we need not so limit
> ourselves in identifying the justification for the
> legislation at issue here, and may legitimately consider
> petitioners' assertion that the statute is applied to
> nude dancing because such dancing "encourag[es]
> prostitution, increas[es] sexual assaults, and attract[s]
> other criminal activity."

*Id.* at 582, 111 S.Ct. at 2468-69 (Souter J. concurring).[15]

### 3. Justice Scalia's concurrence

Justice Scalia also concurred in the judgment. He agreed with
the plurality that the Indiana statute was constitutional, but
disagreed that it was subject to any level of First Amendment
scrutiny. In his view, the statute was "a general law regulating
conduct and not specifically directed at expression [and,
accordingly,] it is not subject to First Amendment scrutiny at
all." *Id.* at 572, 111 S.Ct. at 2463 (Scalia J. concurring)
(emphasis supplied).

### 4. The dissenters

Justice White, joined by Justices Marshall, Blackmun, and

---

[15]For other, not so immediately obvious "secondary effects" of adult
entertainment establishments, see the dissenting opinion of Judge Coffey in
Miller v. Civil City of South Bend, 904 F.2d 1081, 1109 (7th Cir. 1990), *rev'd
sub nom.* Barnes v. Glen Theatre, Inc., 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d
504 (1991), where he suggests that nude dancing "undeniably underscore[s] the
notion that a woman exists solely for the sexual satisfaction of a controlling
group of males" and, therefore, "harms the performers, the audience and society
... through the degradation of women that results from their treatment solely as
objects for lustful male sexual passions and appetites."

13

Stevens, dissented. Justice White advocated strict scrutiny of Indiana's statute, because he believed the statute targeted nude dancing, rather than nudity in general. "Neither the plurality nor the State suggest[ed] that the statute could withstand scrutiny under that standard." *Id.* at 595, 111 S.Ct. at 2475 (White J. dissenting). Justice White also argued that the statute was unconstitutional even under the plurality's analysis, because it failed to satisfy the third prong of the *O'Brien* test: *i.e.*, the statute was not unrelated to suppression of expression.

> Since the State permits the dancers to perform if they wear pasties and G-strings but forbids nude dancing, it is precisely because of the distinctive, expressive content of the nude dancing performances at issue in this case that the State seeks to apply the statutory prohibition. It is only because nude dancing performances may generate emotions and feelings of eroticism and sensuality among the spectators that the State seeks to regulate such expressive activity, apparently on the assumption that creating or emphasizing such thoughts and ideas in the minds of the spectators may lead to increased prostitution and the degradation of women. But generating thoughts, ideas, and emotions is the essence of communication. The nudity element of nude dancing performances cannot be neatly pigeonholed as mere "conduct" independent of any expressive component of the dance.

*Id.* at 592-93, 111 S.Ct. at 2474.

## C.    Eleventh Circuit Precedent

The Eleventh Circuit also has addressed the issues raised by governmental regulation of non-obscene nude dancing in several cases and, like the Supreme Court, reached varying conclusions. The decisions have predominantly turned on the second prong of the *O'Brien* test: whether the law at issue furthered a substantial

14

governmental interest.[16] Prior to the Supreme Court's decision in *Barnes*, the Eleventh Circuit required a "factual basis in the record" to support a finding of a substantial governmental interest.[17] This requirement was not satisfied by general "legislative findings"[18] or "conclusions stated in the ordinance itself."[19] The court required that "the government must show that the articulated concern had more than merely speculative factual grounds and that it was actually a motivating factor in the passage of the legislation."[20]

Following the Supreme Court's decision in *Barnes*, however, the Eleventh Circuit relaxed this requirement. In light of the reasoning contained in the plurality opinion and Justice Souter's concurrence, the Eleventh Circuit now considers the second prong satisfied when the statute's purpose of "protecting societal order and morality is clear," or the statute was passed to combat "the secondary effects of adult entertainment."[21] Accepting a "societal

---

[16]*See* Grand Faloon Tavern, Inc. v. Wicker, 670 F.2d 943 (11th Cir. 1982); Krueger v. City of Pensacola, 749 F.2d 851 (11th Cir. 1985); Leverett v. City of Pinellas Park, 775 F.2d 1536 (11th Cir. 1985); International Eateries of America v. Broward County, 941 F.2d 1157 (11th Cir. 1991); Redner v. Dean 29 F.3d 1495 (11th Cir. 1994).

[17]*Grand Faloon Tavern*, 670 F.2d at 949. The court based its finding of a substantial governmental interest on the "stipulated purpose and believe[d] effect of the ordinance, the deposition of Police Chief Robert Wicker, and a fifty-two page listing of the police calls made to and around the Booby Trap." *Id. See also* Krueger, 749 F.2d at 885. The court rejected the city's attempts to argue that its ordinance was designed to reduce crime associated with nude dancing, because "there [was] no substantial evidence that such a problem in fact existed." *Id. See also Leverett*, 775 F.2d at 1540. The court applied the *Krueger* analysis which required "more than a conclusory assertion of the factual basis and motivation underlying an ordinance that treads upon First Amendment rights." *Id.*

[18]*Grand Faloon Tavern,* 670 F.2d at 949.

[19]*Leverett,* 775 F.2d at 1540.

[20]*Krueger,* 749 F.2d at 855 (citations omitted).

[21]*International Eateries,* 941 F.2d at 1160.

15

interest" to satisfy the second prong has reached the level where no specific findings or specific evidence is required for a reviewing court to conclude that a substantial governmental interest exists.    This shift is demonstrated by the Eleventh Circuit's most recent decision in *Sammy's of Mobile, Ltd. v. City of Mobile*, 140 F.3d 993 (11th Cir. 1998).

In *Sammy's* case, the court was confronted with a city ordinance prohibiting the sale of alcohol in connection with "any motion picture, show, performance, or other presentation upon the licensed premises, which, in whole or in part, depicts nudity or sexual conducts or any simulation thereof." *Id.* at 994. A majority of the panel[22] applied the four-part *O'Brien* test endorsed by the plurality opinion and Justice Souter's concurrence in *Barnes*, and affirmed a summary judgment in favor of the City of Mobile. The court found the ordinance furthered a substantial governmental interest, because the preamble to the ordinance stated that the combination of alcohol and nudity in public places "encourages undesirable behavior and is not in the interest of public health, safety, and welfare." *Id.* at 997. The court also rejected any suggestion that the city council was required to make specific findings, or present specific evidence on the adverse secondary effects of nude dancing in Mobile.

> It is clear under *Barnes*, there is no constitutional requirement that a city make particularized findings regarding the adverse effects of the combination of alcohol and nude entertainment. The Court noted that there were no findings nor any legislative history attached to the Indiana statute, but found the "statute's

---

[22]Judge Hill wrote for himself and Judge Birch; Judge Kravitch dissented.

16

> purpose of protecting societal order and morality is
> clear from its text and history." 501 U.S. at 568, 111
> S.Ct. at 2461. *See also Cafe 207, Inc. v. St. Johns
> County,* 856 F.Supp. 641, 645 (M.D.Fla.1994), *aff'd per
> curiam,* 66 F.3d 272 (11th Cir.1995)("It is now
> established as a matter of law by Supreme Court
> jurisprudence culminating in [*Barnes*] that secondary
> effects of proscribed conduct may be taken into
> consideration by a court evaluating the governmental
> interests justifying impingement upon free speech rights
> even when, as in *Barnes*, there is no legislative history
> demonstrating that the lawmakers actually considered
> secondary effects or any other specific factor (such as
> protecting order and morality) in enacting the challenged
> law.").

*Id.* at 997 n.6.

The court also found that statutes regulating nude dancing

"are not aimed at the erotic message of nude dancing." *Id.* at 997.

Instead, they are aimed at combating the secondary effects of

public nudity. *Id.* at 999.

## D.  Analysis of Controlling Authorities

This court's first task after examination of the foregoing

authorities is, to determine the appropriate level of scrutiny to

apply to Alabama Code § 13A-12-200.11.  That determination is

commenced with the observation that the Supreme Court has never

applied "strict scrutiny" to any regulation, ordinance, or statute

directed at nude dancing.  Rather, the Court appeared to apply a

"rational basis" level of review in *LaRue*, and then "intermediate

scrutiny" in *Doran* and *Schad*.  In *Barnes*, Chief Justice Rehnquist

and Justices O'Connor, Kennedy, and Souter all agreed that

"intermediate scrutiny" provided the appropriate level of review.

While Justice Scalia did not believe that nude dancing is subject

to review under the First Amendment "at all," it is obvious from a

17

review of his concurring opinion that, if forced to subject statutes such as this one to some level of scrutiny, it probably would be a "rational basis" test; certainly, Justice Scalia would impose no higher level of review than the "intermediate scrutiny" applied by the plurality.    Moreover, the Eleventh Circuit consistently has applied an intermediate level of scrutiny to nude dancing regulations.    Accordingly, this court determines the appropriate level of review is "intermediate scrutiny," and the appropriate test is set forth in *United States v. O'Brien*, 391 U.S. 367, 376-77, 88 S.Ct. 1673, 1678-79, 20 L.Ed.2d 672 (1968).

    Like the *Barnes* plurality, this court finds that the first two prongs of the four-part *O'Brien* test are satisfied.    First, public indecency statutes, such as Alabama Code § 13A-12-200.11, are "clearly within the constitutional power of the State and further[] substantial governmental interests."    501 U.S. at 567, 111 S.Ct. at 2461.    Second, the purpose of "protecting societal order and morality" present in *Barnes* also can be found in the Alabama statute.    While the Alabama Legislature was not required to make any particularized findings regarding the adverse effects of nude dancing,[23] its intent to protect societal order and morality is apparent from the text of the statute itself,[24] as well as the codification of the statute within that portion of the Alabama Code addressing "Offenses Against Public Health and Morals."

    The third *O'Brien* factor also is satisfied, because Alabama's

---

[23]Sammy's of Mobile, Ltd. v. City of Mobile, 140 F.3d 993, 997 n.6 (11th Cir. 1998).

[24]Barnes v. Glen Theatre, 501 U.S. 560, 568, 11 S.Ct. 2456, 2461 (1991).

18

interest in preventing offenses against public health and morals is unrelated to the suppression of free expression. As the Eleventh Circuit recognized in *Sammy's of Mobile*, statutes that regulate nude dancing "are not aimed at the erotic message of nude dancing"; rather, they "address the evil of public nudity" among strangers. 140 F.3d at 997. Even though the dance performances to which the Alabama Act will be applied arguably may contain some "communicative" or "expressive" element, it is not the dancing nor the erotic message that is prohibited, "but simply its being done in the nude." *Barnes*, 501 U.S. at 571, 111 S.Ct. at 2463.[25]

Applying *O'Brien's* fourth prong, this court finds that the restriction of Alabama Code § 13A-12-200.11 is no greater than is essential to the furtherance of the State's interests. *See Barnes*, 501 U.S. at 571-72; *Café 207, Inc. v. St. Johns County*, 856 F. Supp. 641, 645-46 (M.D. Fla. 1994).

This court therefore finds that plaintiff has failed to demonstrate a substantial likelihood of success on the merits of her challenge to Alabama Code § 13A-12-200.11. Accordingly, her motion for a temporary restraining order, enjoining enforcement of that statute, is due to be denied.

### III. SECTION 6 OF ACT No. 98-467

Plaintiff also attacks section 6 of Act No. 98-467, which

_____

[25]This court recognizes that Alabama Code § 13A-12-200.11 prohibits nudity "for entertainment purposes": a limitation not present in *Barnes*. Even so, the Eleventh Circuit has found that such a limitation does not necessitate a finding that the statute is related to the suppression of free expression. *See Sammy's of Mobile, Ltd.*, 140 F.3d at 997-98. Rather, a reference to protected expression is permissible, so long as the purpose of the regulation is to combat the secondary effects of nude dancing. *Id.* Indeed, the *Redner* court found that restrictions of the type found in § 13A-12-200.11 are merely "incidental" to free expression. Redner v. Dean, 29 F.3d 1495, 1499 (11th Cir. 1994).

19

amends Alabama Code § 13A-12-200.5, regulating the sale, distribution, and display of "any material which is harmful to minors." Section 6 retains existing provisions of the Code, and adds the following subsection:

> (4) It shall be unlawful for any person to operate an adult bookstore, adult movie house, adult video store, or other form of <u>adult-only enterprise</u> within 1,000 feet of a church, place of worship, church bookstore, public park, public housing project, daycare center, public or private school, college, recreation center, skating rink, video arcade, public swimming pool, private residence, or any other place frequented by minors. Any person who violates this subsection shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not more than ten thousand dollars ($10,000) and may also be imprisoned in the county jail for not more than one year. [Emphasis supplied.[26]]

That language is patterned on a zoning ordinance upheld by the Supreme Court in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

In *Renton*, the Court was presented an ordinance prohibiting the location of an adult movie theater within 1,000 feet of any residential zone, single or multiple-family dwelling, church, park, or school. The Court elected to apply an intermediate level of scrutiny to the ordinance, but did not utilize the *O'Brien* analysis. Instead, the Court analyzed the ordinance "as a form of time, place, and manner regulation." *Id.* at 46, 106 S.Ct. at 928.[27]

---

[26]Alabama Act No. 98-467 does not define the emphasized term, "adult-only enterprise." Even so, Section 6 of the Act amends Alabama Code § 13A-12-200.1, to add a definition of "adult-only entertainment" as follows:

> (3) ADULT-ONLY ENTERTAINMENT. Any commercial establishment or private club where entertainers, employees, dancers, or waiters appear nude or semi-nude.

[27]The Eleventh Circuit has made the following observations about the differences between review under the standards enunciated in *O'Brien* and the "time, place, and manner" test.

20

Such regulations, when "enacted for the purpose of restraining
speech on the basis of its content[,] presumptively violate the
First Amendment." *Id.* at 46-47, 106 S.Ct. at 928. "On the other
hand, so-called 'content-neutral' time, place, and manner
regulations are acceptable so long as they are designed to serve a
substantial government interest and do not unreasonably limit
alternative avenues of communication." *Id.* at 47, 106 S.Ct. at
928. The *Renton* Court concluded the ordinance was a "content-
neutral regulation," because it was aimed at combating the
secondary effects of adult theaters, rather than suppressing the
message contained in adult films. *Id.* at 47-48, 106 S.Ct. at 929.
The Court further found that combating the secondary effects of
adult theaters was a substantial governmental interest. *Id.* at 50,
106 S.Ct. at 930. Moreover, the City of Renton was not required to
perform its own studies of the secondary effects of adult theaters.
*Id.* Instead, the city could rely upon studies performed by the

> There has been considerable confusion in the Court's cases as to
> when each analysis should apply. In recent years, however, the
> Court has stated several times that "in the last analysis [the
> *O'Brien* test] is little, if any, different from the standard applied
> to time, place, or manner restrictions." *Clark v. Community for
> Creative Non-Violence,* 468 U.S. 288, 298, 104 S.Ct. 3065, 3071, 82
> L.Ed.2d 221 (1984); *see also Barnes,* 111 S.Ct. at 2460 (opinion of
> Rehnquist, C.J.) (noting the similarities and applying *O'Brien*);
> *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 2757, 105
> L.Ed.2d 661 (1989) (noting the similarities and applying time,
> place, and manner analysis). Although the wisdom of this trend
> toward a single standard has been questioned, *see* S. Williams,
> Content Discrimination and the First Amendment, 139 U.Pa.L.Rev. 615,
> 636-54 (1991), it is sufficient for our purposes that the Supreme
> Court has determined that under current Court doctrine the answer
> should be the same regardless of which analysis is used. Because we
> conclude that the ordinance at issue in this case more closely
> resembles the ordinance in *Renton* than the statute in *Barnes,* we
> follow *Renton* and apply time, place, and manner analysis.

International Eateries of America v. Broward County, 941 F.2d 1157, 1161 n.2
(11th Cir. 1991).

21

nearby city of Seattle, Washington. *Id.* at 50-52, 106 S.Ct. at 930-31. The Court also observed that the ordinance was

> "narrowly tailored" to affect only that category of [adult] theaters shown to produce the unwanted secondary effects, thus avoiding the flaw [of overbreadth] that proved fatal to the regulations in *Schad v. Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), and *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975).

*Id.* at 52, 106 S.Ct. at 931. Finally, the Court found that the ordinance permitted reasonable alternative avenues of communication, because it left "some 520 acres, or more than five percent of the entire land area of Renton, open to use as adult theater sites." *Id.* at 53, 106 S.Ct. at 932. The plaintiff disputed that finding, because "some of the land in question [was] already occupied by existing businesses, ... 'practically none' of the undeveloped land [was] ... for sale or lease, and ... in general there [were] no 'commercially viable' adult theater sites within the 520 acres left open by the Renton ordinance." *Id.* The Court rejected that argument, saying:

> [A]lthough we have cautioned against the enactment of zoning regulations that have "the effect of suppressing, or greatly restricting access to, lawful speech," ... we have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices. ... In our view, the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city, and the ordinance before us easily meets this requirement.

*Id.* at 54, 106 S.Ct. at 932 (emphasis supplied).

Plaintiff in the instant action raises five arguments against

22

the validity of Alabama Code § 13A-12-200.5(4), despite its substantial similarities to the ordinance upheld in *Renton.*

## A. Access to the Commercial Marketplace

Plaintiff first claims the statute will "effectively deny access to the commercial market place by those wishing to engage in expressive conduct."[28] Plaintiff relies upon two authorities to support that argument: *Renton, supra,* and *Woodall v. City of El Paso,* 49 F.3d 1120 (5th Cir. 1995).[29] As discussed above, however, *Renton* only requires that plaintiff be given "reasonable alternative avenues of communication": *i.e.,* a reasonable opportunity to open and operate an "adult-only entertainment enterprise" in Alabama.    475 U.S. at 54, 106 S.Ct. at 932. Moreover, the *Woodall* court found that proprietors of nude dancing establishments

> had the burden of proving that the Ordinances denied them a reasonable opportunity to open and operate their businesses by failing to provide reasonable alternative avenues of communication.  To meet their burden, the Adult Businesses had to show that the areas left open to them were inadequate to satisfy the demand for adult business locations.

*Woodall,* 49 F.3d at 1126.  Plaintiff has presented no evidence demonstrating that Alabama Code § 13A-12-200.5(4) deprives her of an opportunity to open and operate an adult entertainment establishment in Madison County.  *Renton,* 475 U.S. at 54, 106 S.Ct. at 932.    She also has failed to meet the burden imposed by *Woodall* of demonstrating that "the areas left open to [her] were inadequate

---

[28]Plaintiff's reply to defendants' brief in opposition to motion for temporary restraining order (hereafter, "Plaintiff's brief") at 4.

[29]Plaintiff's points and authorities in support of preliminary injunction at 3.

23

to satisfy the demand for adult business locations." 49 F.3d at 1126.

## B. "Secondary Effects" Analysis

Plaintiff next argues that "distance restrictions are justified only to address 'secondary effect' concerns correlated to adult uses and not merely to suppress expression."[30] According to plaintiff, Alabama Code § 13A-12-200.5(4) therefore is constitutionally infirm, because the Legislature did not conduct an analysis of the "secondary effects" of adult entertainment enterprises: i.e., there was no specific determination that nude dancing increases prostitution, sexual assaults, and other criminal activity. See Barnes v. Glen Theatre, 501 U.S. 560, 582, 111 S.Ct. at 2469 (1991)(Souter J. concurring). Renton seems to support plaintiff's argument:

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.

Renton, 475 U.S. at 51, 106 S.Ct. at 931 (emphasis supplied).

As noted above, however, Barnes and Sammy's instruct this court that no specific evidence of secondary effects is required. Instead, those decisions presuppose that a regulation of nude dancing necessarily is aimed at the pernicious secondary effects thereof. This court is thus persuaded that the Alabama Legislature was not required to make particularized findings regarding the

---

[30]Plaintiff's points and authorities in support of preliminary injunction at 3.

24

"secondary effects" of "adult-only entertainment enterprises."

## C. **Vagueness**

Plaintiff also argues that Alabama Code § 13A-12-200.5(4) is

vague to an unconstitutional degree:

> The Act's inclusion in the array of "protected uses" such
> places as "where minors may be found" is vague and
> overbroad in all contexts. It is difficult to imagine
> where minors might not be found except ostensibly in
> businesses where they are expressly prohibited, i.e.,
> businesses of adult entertainment or perhaps liquor
> establishments. Again, the apparent justification of the
> Act is the protection of minors, but the prohibition
> within the protected zone is clumsily drafted, woefully
> vague, and grossly over broad.[31]

Plaintiff presents no authority in support of that argument.

Plaintiff also blurs the distinctions between the doctrines of

vagueness and overbreadth.

> The overbreadth and vagueness doctrines are related
> yet distinct. *M.S. News Co. [v. Casado]*, 721 F.2d
> [1281,] at 1287 [(10th Cir. 1983)].
>
> > "The vagueness doctrine is anchored in the Due
> > Process Clauses of the Fifth and Fourteenth
> > Amendments, and protects against legislation
> > lacking sufficient clarity of purpose and
> > precision in drafting. *See Erznoznik v. City
> > of Jacksonville*, [422 U.S. 205,] at 217-218,
> > 95 S.Ct. [2268,] at 2276-77 [45 L.Ed.2d 125
> > (1975) ]; *Grayned v. City of Rockford*, 408
> > U.S. 104, 108-14 & n. 5, 92 S.Ct. 2294,
> > 2298-302 & n. 5, 33 L.Ed.2d 222 and n. 5
> > (1972).
>
> *Id.* (footnote omitted). The vagueness doctrine focuses
> on whether the law in question affords a "person of
> ordinary intelligence a reasonable opportunity to know
> what is prohibited, so that he may act accordingly."
> *Grayned*, 408 U.S. at 108-109, 92 S.Ct. at 2298-99.
> "Overbroad legislation need not be vague, indeed it may
> be too clear; its constitutional infirmity is that it
> sweeps protected activity within its proscription." *M.S.
> News Co.*, 721 F.2d at 1287 (citation omitted).

---

[31]Plaintiff's brief at 5.

25

> The overbreadth and vagueness doctrines are related
> in that "a court should evaluate the ambiguous as well as
> the unambiguous scope of the enactment.... [since]
> ambiguous meanings cause citizens to '"steer far wider of
> the unlawful zone" ... than if the boundaries of the
> forbidden areas were clearly marked.'" *Village of
> Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455
> U.S. 489, 494 n. 6, 102 S.Ct. 1186, 1191 n. 6, 71 L.Ed.2d
> 362 (1982) (quoting *Bagget v. Bullitt*, 377 U.S. 360, 372,
> 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377 (1964); (in turn
> quoting *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct.
> 1332, 1342, 2 L.Ed.2d 1460 (1958)).

*American Booksellers v. Webb*, 919 F.2d 1493, 1505-06 (11th Cir. 1990).

Applying those standards, this court cannot find that Alabama Code § 13A-12-200.5(4) is so vague as to violate the First Amendment. Plaintiff only directly attacks the provision of that statute pertaining to "any other place frequented by minors." This court finds that a "person of ordinary intelligence [would] know what is prohibited, so that he may act accordingly." *American Booksellers*, 919 F.2d at 1505.

## D.  Dislodging Existing Uses

Plaintiff next claims "the practical effect of the statute is to permit a protected use to totally dislodge a lawfully existing adult establishment by moving into the protected zone."[32] Plaintiff relies upon *Young v. Simi Valley*, 977 F. Supp. 1017 (C.D. Cal. 1997), as authority for that argument. The *Young* court found an ordinance that regulated zoning of nude dancing establishments violated the First Amendment for two reasons. First, the court found "a relative paucity of alternative avenues of communication"

---

[32]Plaintiff's brief at 4.

26

as required by *Renton. Id.* at 1021. Second, the court found that nude dancing establishments could be denied zoning permits if "sensitive uses" (such as churches or residences) moved into the area desired by the adult entertainment establishment during the zoning application process. *Id.* at 1020. The court was careful to stress, however, that the combination of those two factors necessitated its finding that the zoning ordinance violated the First Amendment. *Id.* at 1021.

The combination of factors present in *Young* is not before this court. The *Young* court relied upon the fact that there were no reasonable alternative avenues of communication available to the plaintiff in that case. This court already has found, however, that plaintiff has not met her burden of demonstrating a lack of such alternatives: *i.e.*, she has not shown Alabama Code § 13A-12-200.5(4) prevents her from owning or operating an adult entertainment establishment in Madison County, Alabama. Plaintiff thus fails to meet the standard required by the authority she cites to this court.

## E. Amortization period

Plaintiff's final argument challenging Alabama Code § 13A-12-200.5(4) is that "the Courts have required that existing uses in conflict with the new distance regulations be grandfathered or amortized."[33] Plaintiff claims the statute provides no amortization period,[34] but her complaint does not identify the provision of the

---

[33]Plaintiff's points and authorities in support of preliminary injunction at 2.

[34]Defendants dispute that claim, and argue that plaintiff received a three month amortization period. Alabama Act No. 98-467 was enacted with the

27

United States Constitution requiring amortization.[35] "Failure to amortize" claims generally appear to be asserted under the Takings Clause of the Fifth Amendment, which prevents condemnation of "private property ... for public use without just compensation." *See SDJ, Inc. v. City of Houston*, 837 F.2d 1268 (5th Cir. 1988); *Centerfold Club, Inc. v. City of St. Petersburg*, 969 F. Supp. 1288, 1307-08 (M.D. Fla. 1997).

To constitute a "taking," however, government action must deny the owner of "all economically beneficial or productive use" of the subject property. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1001, 1014-16, 112 S.Ct. 2885, 2892-94, 120 L.Ed.2d 798 (1992). Plaintiff has not demonstrated that either of her two properties would lose all economically beneficial or productive use. Indeed, plaintiff stipulated that fact during oral argument.

Moreover, "the plaintiffs['] claim of irreparable injury with regard to this claim is likewise suspect since the recovery allowed for a 'taking' is 'just compensation,' for which there is an adequate remedy at law." *Sammy's of Mobile, Ltd. v. City of Mobile*, 928 F. Supp. 1116, 1123 (S.D. Ala. 1996).

This court thus finds that plaintiff has not demonstrated either a substantial likelihood of success on the merits of this

---

requirement that it not become effective until "the first day of the third month following its passage and approval by the Governor ...." Ala. Act. No. 98-467 § 9. Traditionally, Alabama laws are effective on the date they are signed by the governor. Thus, defendants contend the delay between the Act's enactment and its effective date granted an amortization period, during which plaintiff should have relocated her businesses.

[35]Plaintiff's brief suggests there is "a due process or First Amendment requirement to amortize existing business ...." (Plaintiff's brief at 5.) Even so, she presents no authority establishing that a failure to amortize amounts to a violation of due process or First Amendment rights.

28

claim or irreparable injury, and her motion for a temporary restraining order against enforcement of Alabama Code § 13A-12-200.5(4) therefore is due to be denied.

### III. SECTION 8 OF ACT No. 98-467

Plaintiff's final claim attacks Section 8 of Act No. 98-467, which also adds a new section to the Code of Alabama, denominated § 13A-12-200.12, and reading as follows:

(a) Any business establishment that operates as an "adult bookstore," "adult-movie house," "adult-video store," or other form of adult-only entertainment enterprise shall obtain in addition to any licenses required by existing law a special operating license, except that a video rental store that does not engage predominantly in and whose principle business is not the sale or rental of adult material, if it is maintained in compliance with Section 13A-12-200.5(2) or is located in an area restricted to adults. Persons who apply for the license shall provide on the application detailed information concerning ownership and financing, and pay an investigation fee of five hundred dollars ($500) to the county or municipality wherein the business establishment will be located.

(b) If granted the license, the local government, in its discretion, may restrict the type of advertisement that the business establishment can display outside the establishment.

(c) The license shall be revoked if the business establishment is convicted of violating this division.

Plaintiff argues that statute is unconstitutional, because it provides no objective criteria upon which the Madison County Commission can rely when granting licenses for adult entertainment: "Section 13A-12-200.12 provides no objective criteria whatsoever, and may only constitute an enabling act for local governments, whose more specific enactments would be subject to constitutional

29

scrutiny."[36]  Defendants reply as follows:

> Because § 13A-12-200.12 is simply an enabling statute[,]
> enabling Madison County to adopt regulations regarding
> licensing and advertisement, and Madison County has not
> adopted specific regulations or restrictions with regard
> to licensing and advertising, the plaintiff's challenge
> to § 13A-12-200.12 is premature and does not provide a
> legitimate basis for a grant of a temporary restraining
> order.[37]

This court agrees, and finds that plaintiff has not established she
would suffer "irreparable injury" in the absence of a temporary
restraining order.

### IV. CONCLUSION

For the foregoing reasons, this court concludes that
plaintiff's motion for a temporary restraining order is due to be
denied. An order consistent with this memorandum opinion will be
entered contemporaneously herewith.

DONE this the __7th__ day of August, 1998.

_____
United States District Judge

---

[36]Plaintiff's brief at 4.

[37]Defendant's brief at 26 (emphasis supplied).